MARY E. ALEXANDER, ESQ. (SBN: 104173)
Mary Alexander & Associates, P.C.
44 Montgomery Street, Suite 1303
San Francisco, California 94104
Telephone: (415) 433-4440
Facsimile: (415) 433-5440
Email: malexander@maryalexanderlaw.com

ELIZABETH J. CABRASER (SBN: 083151)
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: ecabraser@lchb.com

GRETCHEN NELSON (SBN: 112566)
Nelson & Fraenkel LLP
601 So. Figueroa Street, Suite 2050
Los Angeles, CA 90017
Telephone: (213) 622-6469
Facsimile: (213) 622-6019
Email: gnelson@nflawfirm.com

*Attorneys for Plaintiffs*
[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA LYNN FORD; JAMES DAVID ARTHUR FORD; CAROLE KEALY; KELLY SANDOVAL; RUBEN SANDOVAL; STEPHEN COLLINS; SARAH DAVIES; KURT EMERALD; TRACY EMERALD; LARRY A. FISHER; RITA FISHER; DAVID GONSALVES; MARY ANN GONSALVES; TRACIE LING; BRIAN LOSIE; PEGGY LOSIE; JOHN MILLER; RENATE MILLER; KENNETH PRAG; MARIE RIVERA; PAUL RIVERA; JOHN SHATERIAN; and JUDITH SHATERIAN, on behalf of themselves and all others similarly situated, | Case No.: 2:20-CV-06226 |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| vs. | 1. NEGLIGENCE |
| | 2. GROSS NEGLIGENCE |
| | 3. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS |
| CARNIVAL CORPORATION; CARNIVAL PLC and PRINCESS CRUISE LINES LTD., | 4. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| Defendants. | **DEMAND FOR JURY TRIAL** |

**COMPLAINT AND JURY DEMAND**

Individual and representative Plaintiffs CYNTHIA LYNN FORD; JAMES DAVID ARTHUR FORD; CAROLE KEALY; KELLY SANDOVAL; and RUBEN SANDOVAL bring this action for themselves and on behalf of all persons similarly situated, including Individual Plaintiffs STEPHEN COLLINS; SARAH DAVIES; KURT EMERALD; TRACY EMERALD; LARRY A. FISHER; RITA FISHER; DAVID GONSALVES; MARY ANN GONSALVES; TRACIE LING; BRIAN LOSIE; PEGGY LOSIE; JOHN MILLER; RENATE MILLER; KENNETH PRAG; MARIE RIVERA; PAUL RIVERA; JOHN SHATERIAN; and JUDITH SHATERIAN, and the more than 2000 other passengers who sailed on the roundtrip Motor Vessel ("M/V") GRAND PRINCESS cruise from San Francisco, California on February 11, 2020, to Mexico, against Defendants, PRINCESS CRUISE LINES LTD. ("PRINCESS"), its parent companies CARNIVAL CORPORATION & CARNIVAL PLC (collectively, "CARNIVAL") and allege:

**THE PARTIES**

1.      Individual and representative Plaintiff Cynthia Lynn Ford is *sui juris*, a resident of Placer County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

2.      Individual and representative Plaintiff James David Arthur Ford is *sui juris*, a resident of Placer County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

3.      Individual and representative Plaintiff Carole Kealy is *sui juris*, a resident of San Francisco County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

CLASS ACTION COMPLAINT FOR DAMAGES

4.      Individual and representative Plaintiff Kelly Sandoval is *sui juris*, a resident of Shasta County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

5.      Individual and representative Plaintiff Ruben Sandoval is *sui juris*, a resident of Shasta County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

6.      Individual Plaintiff Stephen Collins is *sui juris*, a resident of San Francisco County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, and continued onboard the ship to Hawaii.  He disembarked on or about March 10, 2020.

7.      Individual Plaintiff Sarah Davies is *sui juris*, a resident of Solano County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

8.      Individual Plaintiff Kurt Emerald is *sui juris*, a resident of Shasta County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

9.      Individual Plaintiff Tracy Emerald is *sui juris*, a resident of Shasta County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

10.      Individual Plaintiff Larry A. Fisher is *sui juris*, a resident of Alameda County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

11.      Individual Plaintiff Rita Fisher is *sui juris*, a resident of Alameda County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

12.      Individual Plaintiff David Gonsalves is *sui juris*, a resident of Contra Costa County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

13.     Individual Plaintiff Mary Ann Gonsalves is *sui juris*, a resident of Contra Costa County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

14.     Individual Plaintiff Tracie Ling is *sui juris*, a resident of Solano County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

15.     Individual Plaintiff Brian Losie is *sui juris*, a resident of British Columbia, Canada, and was a passenger onboard the Grand Princess cruise from February 11, 2020, and continued onboard the ship to Hawaii.  He disembarked on March 9, 2020.

16.     Individual Plaintiff Peggy Losie is *sui juris*, a resident of British Columbia, Canada, and was a passenger onboard the Grand Princess cruise from February 11, 2020, and continued onboard the ship to Hawaii.  She disembarked on March 9, 2020.

17.     Individual Plaintiff John Miller is *sui juris*, a resident of Sonoma County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

18.     Individual Plaintiff Renate Miller is *sui juris*, a resident of Sonoma County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

19.     Individual Plaintiff Kenneth Prag is *sui juris*, a resident of San Francisco County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, and continued onboard the ship to Hawaii.  He disembarked on March 10, 2020.

20.     Individual Plaintiff Marie Rivera is *sui juris*, a resident of Contra Costa County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

CLASS ACTION COMPLAINT FOR DAMAGES

21.     Individual Plaintiff Paul Rivera is *sui juris*, a resident of Contra Costa County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

22.     Individual Plaintiff John Shaterian is *sui juris*, a resident of Contra Costa County, California and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

23.     Individual Plaintiff Judith Shaterian is *sui juris*, a resident of Contra Costa County, California, and was a passenger onboard the Grand Princess cruise from February 11, 2020, to disembarkation on February 21, 2020.

24.     Defendant CARNIVAL CORPORATION was incorporated in 1972 in Panama and has its headquarters in Miami, Florida.

25.     Defendant CARNIVAL PLC was incorporated in 2000, in Wales, United Kingdom. It also has its headquarters in Miami, Florida.

26.     Upon information and belief, Defendant PRINCESS CRUISE LINES LTD. is incorporated in Bermuda, with its headquarters in Santa Clarita, California.

27.     Upon information and belief, at all times hereto, CARNIVAL CORPORATION, CARNIVAL PLC, and PRINCESS advertised, marketed, sold, and profited (directly or indirectly) from and owned, controlled, and operated the cruise ship, M/V GRAND PRINCESS.

**ALTER EGO/PIERCING CORPORATE VEIL**

28.     Defendants CARNIVAL CORPORATION, CARNIVAL PLC, AND PRINCESS are alter egos and/or agents of each other such that the corporate form should be disregarded.

29.     CARNIVAL CORPORATION and CARNIVAL PLC operate as a single economic enterprise. They share a senior executive management team and identical Boards of Directors. Both CARNIVAL CORPORATION and CARNIVAL PLC share a single headquarters in Miami, Florida.

CLASS ACTION COMPLAINT FOR DAMAGES

30.     As described by CARNIVAL CORPORATION in a filing with the Securities and Exchange Commission ("SEC"), "Carnival Corporation and Carnival plc operate a dual listed company ('DLC'), whereby the businesses of Carnival Corporation and Carnival plc are combined through a number of contracts and through provisions in Carnival Corporation's Articles of Incorporation and By-Laws and Carnival plc's Articles of Association."

31.     Plaintiffs bring this lawsuit against CARNIVAL CORPORATION and CARNIVAL PLC individually, but because the entities work as alter egos and/or agents of one another, Plaintiff refers to them collectively throughout this Complaint as "CARNIVAL."

32.     In a federal criminal plea agreement signed by CARNIVAL in 2016, CARNIVAL described PRINCESS as one of several "operating lines" that together comprise the "Carnival Group" of companies.  In that 2016 federal criminal plea agreement, CARNIVAL stated that it "currently monitors and supervises environmental, safety, security, and regulatory requirements for Princess and other Carnival brands. Carnival Corporation & plc operate a total of 101 ships visiting 700 ports around the world, including most major ports in the United States."

33.     CARNIVAL has ownership and control over PRINCESS, which is organized under Holland America Group within CARNIVAL. CARNIVAL has claimed in filings with the SEC that it wholly owns PRINCESS as a subsidiary.

34.     CARNIVAL and PRINCESS share the same Board of Directors and almost all of the same executive officers, and appear to use the same assets.

35.     CARNIVAL exerts control and domination over PRINCESS's business and day-to-day operations.

## JURISDICTION

36.     This Court has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333, as this case involves a maritime tort. The type of incident and injuries suffered by Plaintiffs and the Class had the potential to impact maritime

- 6 -                    CLASS ACTION COMPLAINT FOR DAMAGES

commerce as Plaintiffs and the Class suffered harm and Plaintiffs and the Class were and continue to be at serious risk of imminent harm as a result of exposure to COVID-19 aboard the cruise ship upon which they were paying passengers.

37.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, codified at 28 USC §1332(d)(2)(A) and (C), because the claims of the proposed Class Members exceed $5,000,000 and because at least one member of the Proposed Class of plaintiffs is a citizen of a state different from at least one Defendant.

38.     This Court has personal jurisdiction over Defendants, who each conduct substantial business in this district.

39.     Defendant PRINCESS has its headquarters in Santa Clarita, California.

40.     Upon information and belief, CARNIVAL, including by and through its subsidiary, PRINCESS, markets cruise vacations to California residents and employs thousands of California residents to work at its California headquarters. The Court has personal jurisdiction over CARNIVAL because CARNIVAL is authorized to do business in California, conducts substantial business in California, and some of the actions giving rise to this Complaint took place in California.

41.     The claims asserted herein arise from Defendants' contacts with California.

42.     Additionally, each of the Defendants purports to be a party to the Passage Contract, which purports to name the Central District as proper venue to actions against Defendants. Although Plaintiffs do not concede the enforceability of the Passage Contract, by naming this District as a proper venue, Defendants have consented to personal jurisdiction in this District.

43.     Each of the facts pleaded herein independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

CLASS ACTION COMPLAINT FOR DAMAGES

1

## **VENUE**

2      44.    Venue in the Central District of California is proper under 28 U.S.C. §

3 1391 because Defendants are deemed to reside in any judicial district in which they

4 are subject to personal jurisdiction.

5      45.    Additionally, without conceding the enforceability of the Passage

6 Contract, Plaintiffs acknowledge the inclusion in the Passage Contract of a venue

7 selection provision designating the United States District Court for the Central

8 District of California in Los Angeles as a proper venue for this action.

9

## **FACTUAL BACKGROUND**

10      46.    In December 2019, a new strain of Coronavirus known as COVID-19

11 or SARS-CoV-2 was first observed in humans in China. The virus quickly spread

12 through China and Asia and has caused a global pandemic. Infection with COVID-

13 19 is generally associated with symptoms such as fever, a dry cough, shortness of

14 breath, infection, and pneumonia, and it can be fatal.

15      47.    In addition to the cold- and flu-like symptoms COVID-19 patients

16 typically experience, the virus has been linked to loss of taste and smell, blood

17 clots, severe strokes, heart inflammation, acute kidney disease, intestinal damage,

18 liver damage, and neurological problems.[1] Clinicians and public health experts

19 continue to learn more about the virus, its effects on the human body, and the

20 residual impact on the health of those who have been exposed to or infected with

21 COVID-19.

22      48.    As of the filing of this complaint, there have been over 3.2 million

23 cases and over 134,000 deaths in the United States as a result of COVID-19. Over

24 4,500 cases and, as of this filing, 50 deaths have been reported in San Francisco.

25

26 [1] Lenny Bernstein, Carolyn Y. Johnson, Sarah Kaplan and Laurie McGinley.

27 *Coronavirus destroys lungs. But doctors are finding its damage in kidneys, hearts, and elsewhere.*, The Washington Post. April 15, 2020.

28 https://www.washingtonpost.com/health/coronavirus-destroys-lungs-but-doctors-are-finding-its-damage-in-kidneys-hearts-and-elsewhere/2020/04/14/7ff71ee0-7db1-11ea-a3ee-13e1ae0a3571_story.html (last visited April 29, 2020).

CLASS ACTION COMPLAINT FOR DAMAGES

49.     On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency.

50.     In early February 2020, experts in the European Union, led by epidemiologist Dr. Christou Hadjichristodoulou, released guidelines for the cruise industry that included an outline of the risk of COVID-19 outbreaks aboard cruise ships and recommended response protocols.[2] Specifically, the guidelines directed that, in the event of a COVID-19 case, close contacts of the case should be quarantined in their cabin or on shore, and "casual contacts" should be disembarked.[3]

51.     Defendants CARNIVAL and PRINCESS represent that they have a commitment to "the health, safety, and security" of their passengers and promote their business as one that "always strives to be free of injuries, illness and loss."[4] They further assert that they "[s]upport a proactive framework of risk mitigation in the areas of HESS [Health, Environment, Safety, Security] aimed at preventing, monitoring and responding to threats."[5]

---

[2] Interim Advice for Preparedness and Response to Cases of Acute Respiratory Disease at Points of Entry in the European Union (EU) / EEA Member States (MS): Advice for ship operators for preparednessand response to the outbreak of 2019-nCoV acute respiratory disease, Feb. 3, 2020, https://www.gac.com/491364/siteassets/about-gac/coronavirus/eu-interim-advice_2019-ncov_maritime_4_2_2020_f.pdf (last visited April 6, 2020); *see also* Matt Apuzzo, Motoko Rich and David Yaffe-Bellany, *Failures on Diamond PrincessShadow Another Cruise Ship Outbreak*, The New York Times, March 8, 2020, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).

[3] Healthy GateWays, Algorithm for decision making in response to an event of a suspect case of COVID-19, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).

[4] Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, https://www.carnivalcorp.com/leading-responsibly/health-environment-safety-security-sustainability-policy-governance/ (last visited April 7, 2020).

[5] Carnival Corporation & PLC Health, Environmental, Safety, Security, and Sustainability Corporate Policy, https://www.carnivalcorp.com/static-

52.     However, in or before early February 2020, Defendants became aware of an outbreak of COVID-19 aboard the cruise ship the DIAMOND PRINCESS, which is operated by CARNIVAL and PRINCESS. The outbreak originated on the DIAMOND PRINCESS while the vessel was docked in Yokohama, Japan. Ten cases were originally diagnosed, and that number rapidly escalated to over 700 cases—over one-fifth of the passengers onboard. Investigative reporting about the Diamond Princess alleges that well after CARNIVAL and PRINCESS became aware of the first case aboard the ship, Defendants worked to "keep the fun going" by "encouraging [guests] to mingle."[6]

53.     To date, at least14 of the DIAMOND PRINCESS' passengers have died as a result of COVID-19,[7] and cruises run by CARNIVAL have been identified as responsible for more than 1,500 positive COVID-19 infections, and almost 40 deaths.

54.     On February 11, 2020—approximately ten days after Defendants learned about the infection aboard the DIAMOND PRINCESS—Defendants boarded Plaintiffs and over 2,000 other passengers onto the M/V GRAND PRINCESS for a roundtrip voyage to Mexico without conducting any effective medical screenings for passengers and without providing any additional information about best practices to mitigate or prevent the spread of COVID-19.

55.     Upon information and belief, throughout the course of the 10-day voyage to Mexico, Defendants did not alter their on-ship protocols, event itineraries, or cleaning and disinfectant practices in order to prevent the spread of COVID-19. Defendants did not, for example, institute any medical examination or

files/0b8327aa-c3be-4022-a1a5-a6dad7123af7 (last visited April 7, 2020).

[6] Austin Carr and Chris Palmieri, *Socially Distance This: Carnival Executives Knew They Had a Virus Problem, But Kept the Party Going*, Bloomberg, April 16, 2020,  https://www.bloomberg.com/features/2020-carnival-cruise-coronavirus/ (last visited April 20, 2020).

[7] Lauren Smiley, *27 Days in Tokyo Bay: What Happened on the Diamond Princess*, Wired, May 13, 2020, https://www.wired.com/story/diamond-princess-coronavirus-covid-19-tokyo-bay/.

CLASS ACTION COMPLAINT FOR DAMAGES

screening procedures for passengers leaving and returning to the ship at any of the M/V GRAND PRINCESS's ports of call. Nor did Defendants provide passengers onboard the M/V GRAND PRINCESS any information about COVID-19.

56.     On or around February 19, 2020, Defendants became aware of at least one passenger suffering from COVID-19 symptoms onboard the M/V GRAND PRINCESS, but they did not alert Plaintiffs or other passengers aboard the ship, and did not put into place any quarantine requirements or shelter-in-place and social distancing protocols.

57.     According to CARNIVAL's Chief Medical Officer, Grant Tarling, MD, MPH, Defendants believed the infected passenger was carrying the virus when he boarded the M/V GRAND PRINCESS on February 11, 2020, but because Defendants did not provide any screening for passengers, they were unaware of his condition.[8]

58.     Dr. Tarling reported that the infected passenger sought medical treatment from the medical center onboard the M/V GRAND PRINCESS on February 20, 2020. The passenger reported suffering from "acute respiratory distress" for about a week before seeking treatment. Dr. Tarling did not say whether the passenger had sought any medical help prior to February 20, 2020. Upon information and belief, this information would have triggered mandatory reporting under 42 CFR 71.1 *et seq.* and constitutes a "hazardous condition" per 33 CFR § 160.216.[9]

---

[8] Thomas Fuller, John Eligon, and Jenny Gross, *Cruise Ship, Floating Symbol of America's Fear of Coronavirus, Docks in Oakland*, The New York Times, March 9, 2020, https://www.nytimes.com/2020/03/09/us/coronavirus-cruise-ship-oakland-grand-princess.html (last visited April 7, 2020).

[9] Section 160.216 requires that "[w]henever there is a hazardous condition … on board a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge must immediately notify the nearest Coast Guard Sector Office . . . ." A "[h]azardous condition means any condition that may adversely affect the safety of any vessel … or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve … injury *or illness of a person aboard* … ." 33 CFR § 160.202 (emphasis added).

CLASS ACTION COMPLAINT FOR DAMAGES

59.     Upon information and belief, multiple passengers on the M/V GRAND PRINCESS's Mexico trip suffered from COVID-19 symptoms while on the vessel, exposing other passengers, including Plaintiffs, and crew members onboard the ship to the virus. At least 100 passengers who traveled on board the M/V GRAND PRINCESS have tested positive for COVID-19, and at least two passengers who traveled on the M/V GRAND PRINCESS's Mexico trip died after disembarking.[10] One of these fatalities was the first-reported death caused by COVID-19 in California.[11]

60.     On February 21, 2020, the M/V GRAND PRINCESS arrived at port in San Francisco and most of the passengers from the Mexico trip disembarked.  Some passengers, including Plaintiffs Brian Losie, Peggy Losie, Kenneth Prag, and Stephen Collins, remained onboard to travel on the ship's subsequent voyage headed to Hawaii.

61.     Upon information and belief, on or about February 25, 2020, CARNIVAL and PRINCESS emailed passengers that had traveled on the M/V GRAND PRINCESS's trip to Mexico alerting them that some of their fellow travelers had suffered from COVID-19 and that they may have been exposed to COVID-19.

---

[10] Mark Berman, *Two Grand Princess passengers die from coronavirus, officials say*, The Washington Post, March 25, 2020, https://www.washingtonpost.com/nation/2020/03/25/two-grand-princess-passengers-died-coronavirus-officials-say/ (last visited May 19, 2020).

[11] It has since been discovered that other Californians suffered from and died as a result of COVID-19 prior to the February 11, 2020 cruise aboard the M/V GRAND PRINCESS. Nevertheless, the death of a Placer County resident who traveled on the M/V GRAND PRINCESS's February 11, 2020 cruise to Mexico spurred the state's initial stay-at-home orders. *See* Placer County Announces Death of Patient with COVID-19, March 4, 2020, https://www.placer.ca.gov/6438/Death-of-patient-with-COVID-19 (last visited May 19, 2020); Bill Chapel, *Coronavirus Deaths in Washington and California, Where Gov. Declares Emergency*, NPR, March 4, 2020, https://www.npr.org/sections/health-shots/2020/03/04/812121540/coronavirus-los-angeles-declares-emergency-and-u-s-reports-80-cases-in-13-states (last visited May 19, 2020).

CLASS ACTION COMPLAINT FOR DAMAGES

62.     On March 4, 2020, Defendants alerted passengers who had embarked upon the Hawaii-bound trip aboard the M/V GRAND PRINCESS on February 21, 2020, about a "small cluster of COVID-19 cases in Northern California" related to Plaintiffs' Mexico-bound trip aboard the ship. Upon information and belief, Defendants knew at that time that M/V GRAND PRINCESS passengers on the February 21, 2020, voyage were currently suffering from COVID-19 and that there was a potential outbreak.

63.     Spurred by information regarding conditions onboard the M/V GRAND PRINCESS during its Hawaii voyage, and by the death of a passenger who had been onboard the ship during Plaintiffs' Mexico-bound trip, Governor Gavin Newsom declared a state of emergency on March 4, 2020, to manage the COVID-19 outbreak in California. As a result, the State of California refused to allow the vessel into port in San Francisco, forcing the vessel to anchor off the city's coast. Governor Newsom stated at a press conference that there were 11 passengers and 10 crew members experiencing symptoms.

64.     On or about March 4, 2020, Defendants asked passengers who traveled on both the Mexico and Hawaii trips, including Plaintiffs Brian Losie, Peggy Losie, and Kenneth Prag, to quarantine in their cabins.

65.     On or about Thursday, March 5, 2020, two weeks after the M/V GRAND PRINCESS sailed for Hawaii, Defendants instituted some changes in their operation of the vessel, including cabin/state room quarantine, meal service within the cabins/state rooms, and cessation of daily turndown service and communal activities. Defendants had never instituted these protocols during the Mexico-bound trip, despite knowing about the potential for contagion aboard the cruise ship, and despite becoming aware, while the ship was still at sea, that at least one passenger was suffering from COVID-19.

66.     On or around March 6, 2020—two weeks after most Plaintiffs disembarked from their trip, and even longer after Defendants became aware that a

- 13 -

passenger was suffering from COVID-19 symptoms onboard—passengers that had traveled onboard the Grand Princess from February 11 through February 21, including Plaintiffs, received a letter from Defendants alerting them that they may have been exposed to COVID-19 while onboard the M/V GRAND PRINCESS.

67.     Plaintiffs and other passengers who continued onboard the M/V GRAND PRINCESS for the Hawaii-leg of the cruise were forced to remain quarantined in their cabins until on or about March 9, 2020, when the vessel was finally allowed to dock at the port of Oakland.  Following disembarkation, Plaintiffs and other passengers that traveled to Hawaii were forced to spend approximately two weeks at government facilities, such as Travis Air Force base.

68.     At the time of this filing, Defendant CARNIVAL has cancelled future cruises embarking from San Francisco through the end of 2020.  However, CARNIVAL's website indicates that it intends to begin operating certain cruise ships as early as October 1, 2020, potentially posing grave threats to their passengers, crew members, and the public health.[12]

69.     If Plaintiffs had known the serious and actual risks of contracting or spreading COVID-19 while onboard the M/V GRAND PRINCESS, Plaintiffs would not have sailed on the February 11, 2020, roundtrip voyage to Mexico. Or, at minimum, if they had been made aware after embarkation of the growing and continued risk, they would have disembarked from the ship at one of its ports of call.  Plaintiffs who remained onboard the M/V Grand Princess after February 21, 2020, to travel to Hawaii would not have done so.

70.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff Peggy Losie developed a cough while traveling on the initial leg of the cruise, which traveled to Mexico.  Her cough became progressively worse.  On or about February 28, 2020, she presented to the medical center and was prescribed Tamiflu tablets, issued an inhaler, and treated on a nebulizer.  The medical center

---

[12] *See* Carnival, Health and Safety Updates, https://www.carnival.com/health-and-sailing-updates (last visited May 31, 2020).

CLASS ACTION COMPLAINT FOR DAMAGES

checked her temperature twice daily and she was asked to remain confined to her quarters until the evening of February 29, 2020. At that time, the Ship nurse declared Ms. Losie free to resume normal activities. Ms. Losie chose to self-isolate for the next two days because she continued to feel ill and her symptoms had not subsided.

71. As a direct and proximate result of Defendants' acts and omissions, Plaintiff Cynthia Lynn Ford contracted, and tested positive for, COVID-19. Ms. Ford became ill and suffered from symptoms associated with COVID-19.

72. As a direct and proximate result of Defendants' acts and omissions, Plaintiff James David Arthur Ford contracted, and tested positive for, COVID-19. Mr. Ford became ill and suffered from symptoms associated with COVID-19.

73. As a direct and proximate result of Defendants' acts and omissions, Plaintiff Larry Fisher contracted and tested positive for COVID-19.

74. As a direct and proximate result of Defendants' acts and omissions, Plaintiff Rita Fisher contracted and tested positive for COVID-19. She suffered from severe symptoms associated with COVID-19 and was admitted to the intensive care unit ("ICU"). She remained in the ICU until June 12, 2020—approximately three months after passengers disembarked from the Grand Princess.

75. As a direct and proximate result of Defendants' acts and omissions, Plaintiff Kelly Sandoval contracted, and tested positive for, COVID-19. Ms. Sandoval became ill and suffered from symptoms associated with COVID-19.

76. As a direct and proximate result of Defendants' acts and omissions, Plaintiff Ruben Sandoval contracted, and tested positive for, COVID-19.

77. As a direct and proximate result of Defendants' acts and omissions, Plaintiff Carole Kealy became ill and suffered from symptoms associated with COVID-19, including fever, fatigue, night sweats, and sleep apnea.

78.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff Marie Rivera became ill and suffered from symptoms associated with COVID-19.

79.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff Paul Rivera suffered from symptoms associated with COVID-19, including a fever.

80.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff Judith Shaterian developed a respiratory infection, which is a negative health outcome associated with COVID-19.

81.     As a direct and proximate result of the negligence and gross negligence of Defendants in exposing Plaintiffs and Class Members to actual risk of immediate physical injury, Plaintiffs and Class Members have suffered injuries and emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

82.     Additionally, as public health experts and physicians learn more about the myriad ways COVID-19 attacks and damages the body, Plaintiffs and Class Members develop new and evolving medical fears and uncertainties that require and will continue to require medical diagnostic exams. Plaintiffs and the Class Members are suffering and will continue to suffer due to the ever-present fear and anxiety that they will or may later experience negative health outcomes or complications as a direct and proximate result of being exposed to, and potentially contracting, COVID-19 because of Defendants' negligent and grossly negligent acts and omissions.

83.     It is expected that, as a result of Defendants' negligence and gross negligence, these Plaintiffs and the Class will continue to suffer and will, in the

future, require medical services to monitor for as yet unidentified symptoms or negative health outcomes related to COVID-19.

## NOTICE

84.     Section 16(A)(i) of the Passage Contract purports to require that claimants provide notice to PRINCESS and CARNIVAL of any potential claims. Although Plaintiffs do not concede that this provision is enforceable, Plaintiffs and Class Members have complied with this requirement by providing written notice to Defendants' electronically on June 25, 2020 and July 7, 2020.

## CLASS ACTION ALLEGATIONS

85.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all similarly-situated persons pursuant to Federal Rules of Civil Procedure 23(a) and (b)(1), (b)(2), (b)(3), and/or (c)(4). This action satisfies the applicable numerosity, commonality, typicality, adequacy, predominance, and/or superiority requirements of those provisions.

86.     The proposed Class is defined as follows:  All persons in the United States, who sailed as passengers on the M/V GRAND PRINCESS cruise from San Francisco, California, leaving on February 11, 2020, roundtrip to Mexico, including those passengers who continued traveling onboard the M/V GRAND PRINCESS to Hawaii, which embarked on February 21, 2020.

87.     Excluded from the proposed Class are: (1) CARNIVAL and PRINCESS, any entity or division in which either have a controlling interest, and its legal representatives, officers, directors, assigns and successors; (2) the judicial officer(s) to whom this case is assigned and the judicial officer(s)' immediate family and legal staff; and (3) governmental entities. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, otherwise divided into subclasses, or modified in any other way.

CLASS ACTION COMPLAINT FOR DAMAGES

88.     The individual Plaintiffs named in this complaint support the use of the class action mechanism to achieve economy, efficiency, fairness, and consistency of result by determining the important common questions raised in this action on a common basis.

A.     **Numerosity**

89.     There were, on information and belief, approximately 2,422 passengers on the M/V GRAND PRINCESS for the cruise that is the subject of this action. Their exact number and identities can be readily ascertained from Defendants' records. The individual joinder of all passengers is impractical, and the class action procedure is more practical, cost-effective, inclusive, and efficient than multiple lawsuits on the common questions of law and fact that unite the class, or piecemeal and incomplete individual joinder. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, as well as from records kept by the Department of Health and Human Services.

B.     **Typicality**

90.     The claims of Plaintiffs are typical of the claims of Class Members in that Plaintiffs, like all Class Members, sailed on the leg of the M/V GRAND PRINCESS cruise that began on February 11, 2020 and returned on February 21, 2020. Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they sailed on a cruise they would not have sailed on and suffered significant injury, emotional distress and economic damage caused by the negligence of the Defendants. The factual bases of CARNIVAL and PRINCESS's misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

CLASS ACTION COMPLAINT FOR DAMAGES

1

**C.     Adequate Representation**

2      91.     Plaintiffs CYNTHIA LYNN FORD, JAMES DAVID ARTHUR

3  FORD, CAROLE KEALY, KELLY SANDOVAL, and RUBEN SANDOVAL will

4  fairly and adequately represent and protect the interests of the Class Members.

5  Plaintiffs CYNTHIA LYNN FORD, JAMES DAVID ARTHUR FORD, CAROLE

6  KEALY, KELLY SANDOVAL, and RUBEN SANDOVAL have retained counsel

7  with substantial experience in prosecuting class actions, aggregate suits, and mass

8  torts.

9      92.     Plaintiffs CYNTHIA LYNN FORD, JAMES DAVID ARTHUR

10  FORD, CAROLE KEALY, KELLY SANDOVAL, and RUBEN SANDOVAL and

11  their counsel are committed to vigorously prosecuting this action on behalf of all

12  Class Members, and have the financial resources to do so. Neither Plaintiffs

13  CYNTHIA LYNN FORD, JAMES DAVID ARTHUR FORD, CAROLE KEALY,

14  KELLY SANDOVAL, nor RUBEN SANDOVAL, nor their counsel have interests

15  adverse to those of the Class Members.

16

**D.     Predominance of Common Issues**

17      93.     There are numerous questions of law and fact, including those related

18  to Defendants' knowledge, conduct, and duty throughout the events described in

19  this Complaint, common to Plaintiffs and Class Members that predominate over

20  any question affecting only individual Class Members, the answers to which will

21  advance resolution of the litigation as to all Class Members. These common legal

22  and factual issues include, *inter alia*:

23          a.     what Defendants knew about the presence and risks associated

24  with the COVID-19 virus, and contagions generally, and when they knew it;

25          b.     whether Defendants should have canceled the subject cruise to

26  avoid exposing passengers to a deadly pathogen and/or taken other steps to avoid

27  exposing passengers to a deadly pathogen;

28

CLASS ACTION COMPLAINT FOR DAMAGES

1              c.       whether, in light of the widespread knowledge of COVID-19

2  and Defendants' knowledge of the risk of contagion aboard cruise ships,

3  Defendants had a duty to conduct medical screenings of passengers prior to

4  boarding Plaintiffs and others onto the M/V GRAND PRINCESS on February 11,

5  2020;

6              d.      whether Defendants had a duty to decontaminate the M/V

7  GRAND PRINCESS after they knew or should have known that individuals aboard

8  the M/V GRAND PRINCESS prior to the subject cruise were or were potentially

9  carriers of the COVID-19 virus;

10            e.      whether Defendants had a duty to disclose to passengers

11  onboard the M/V GRAND PRINCESS that at least one person onboard the vessel

12  was experiencing symptoms of COVID-19, and the related risks that Plaintiffs

13  could contract and /or spread the virus;

14            f.       whether Defendants had a duty to institute social distancing or

15  quarantine protocols on the ship when they became aware that at least one

16  passenger onboard was suffering from COVID-19 symptoms;

17            g.      whether Defendants failed to disclose, during the vessel's trip or

18  in the days immediately following, that passengers and crew aboard the M/V

19  GRAND PRINCESS between February 11, 2020, and February 21, 2020, were or

20  were potentially carriers of the COVID-19 virus and other relevant information;

21            h.      interpretation of the applicable contract documents and the

22  associated "Passenger Bill of Rights" incorporated therein;

23            i.       whether Defendants acted as alter egos and/or agents, such that

24  they should be held jointly liable for the conduct alleged herein;

25            j.       whether CARNIVAL is liable for the acts, omissions, and

26  violations described in this Complaint;

27            k.      whether PRINCESS is liable for the acts, omissions, and

28  violations described in this Complaint; and

      CLASS ACTION COMPLAINT FOR DAMAGES

l.      whether the conduct of any or all of the defendants warrants the imposition of punitive damages to vindicate the societal interest in punishment and deterrence.

**E.      Superiority**

94.     Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of CARNIVAL's and PRINCESS's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

95.     Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims (compared to the cost of litigation), it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

96.     Class treatment of common questions of law and fact is superior to other available procedures, such as multiple individual actions or piecemeal litigation because class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

**F.      Limited Fund**

97.     In an abundance of caution, Plaintiffs take note of the presently apparent financial circumstances of CARNIVAL and/or PRINCESS to allege the possibility that their assets and resources available to fairly compensate Plaintiffs and Class Members, to satisfy appropriate punitive damages awards, and/or otherwise fairly address the claims against them may constitute a "limited fund" within the meaning of *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), such that class certification under Rule 23(b)(1)(B) is necessary and appropriate as a matter of due process and equity.

CLASS ACTION COMPLAINT FOR DAMAGES

### G.    **Mass Action**

98.    In the alternative, this matter should proceed as a mass action, as defined in 28 U.S.C. § 1332 (d)(11)(B)(i) and should be tried jointly on the ground that Plaintiffs' claims involve common questions of law or fact, including as set forth above.

99.    Plaintiffs' individual claims exceed the required jurisdictional amount of $75,000.00.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### NEGLIGENCE AGAINST ALL DEFENDANTS

100.    Plaintiffs re-allege all allegations in all preceding paragraphs as if alleged fully herein.

101.    Defendant PRINCESS owed Plaintiffs, and the Class, who were passengers who boarded the M/V GRAND PRINCESS on February 11, 2020, a duty to ensure that they would not be exposed to an unreasonable risk of harm. Defendant CARNIVAL, who wholly owner PRINCESS and "currently monitors and supervises" PRINCESS's adherence to "environmental, safety, security, and regulatory" requirements owed Plaintiffs a duty to ensure that their passage would be safe and secure, and free from exposure to an unreasonable risk of harm.

102.    Likewise, Defendants PRINCESS and CARNIVAL owed Plaintiffs and the Class a duty to take actions to prevent and mitigate the risk of threats to passengers' health and safety, including by ensuring that the M/V GRAND PRINCESS was properly cleaned, disinfected, and safely maintained before and during the voyage.

103.    Defendants knew or should have known that cruise ships pose an especially severe risk of viral outbreak. Defendants knew or should have known that cruise ships owned and operated by Defendants had been the sites of prior, lethal outbreaks of COVID-19, and should have been aware of new guidelines for the cruise industry published by Dr. Hadjichristoulou and a team of European

CLASS ACTION COMPLAINT FOR DAMAGES

experts on February 3, 2020. In particular, Defendants had knowledge of the actual risks facing passengers based on the outbreak of the virus on the M/V Diamond Princess.

104.   Defendants knew or should have known that passengers boarding the M/V GRAND PRINCESS could be carriers of COVID-19, and that crew members aboard the M/V GRAND PRINCESS were or could have been exposed to COVID-19 and were or could have been carriers of the virus, but did not institute any screening procedures prior to the February 11, 2020, embarkation of the M/V Grand Princess.

105.   Defendants failed to do what a reasonably careful cruise ship owner and operator would do under the circumstances.

106.   Defendants breached their duty to Plaintiffs and the Class when, with the aforementioned knowledge, Defendants nevertheless chose to embark on the San Francisco-Mexico voyage.

107.   Defendants also breached their duties when, with that same knowledge, they chose not to screen or medically examine any passengers or crew members, or prevent those infected with the virus from boarding the ship, prior to embarkation on February 11, 2020, or throughout the cruise at any ports of call after passengers had left and returned to the ship.

108.   Additionally, Defendants breached their duties to Plaintiffs and the Class when Defendants repeatedly failed to notify passengers aboard the M/V GRAND PRINCESS during the instant voyage that passengers traveling alongside them were suffering from COVID-19 symptoms.

109.   If Defendants had adequately informed Plaintiffs and the Class prior to boarding, or at any other time, of the relevant information in Defendants' possession, including facts regarding Defendants' lack of adequate disinfecting procedures on the M/V GRAND PRINCESS, lack of adequate quarantining procedures, and the actual risk of exposure to COVID-19, Plaintiffs and the Class

CLASS ACTION COMPLAINT FOR DAMAGES

could have made informed decisions about their health and their families' health, including disembarking from or not boarding the vessel.

110. Defendants repeatedly breached their duties to Plaintiffs and the Class when, throughout the San Francisco-Mexico voyage, with the aforementioned knowledge, they repeatedly chose not to inform Plaintiffs of the continuing and growing risks of contracting COVID-19, and chose not to provide Plaintiffs with the informed option to disembark at one of the vessel's ports of call.

111. Finally, Defendants continued to breach their duties to Plaintiffs and the Class when, after learning that at least one passenger onboard was suffering from COVID-19 symptoms, they, *inter alia*: chose not to warn Plaintiffs' and the Class of the potential for infection; failed to implement quarantine or social distancing protocols; chose to continue operating large, public gatherings and meals; chose to continue to operate daily turndown service; and chose to continue hosting communal activities.

112. As a direct and proximate result of Defendants' failure to safeguard Plaintiffs and the Class, Plaintiffs and the Class were at actual risk of immediate physical injury.

113. As a direct and proximate result of Defendants' breach of their duties of care and their negligent exposure of Plaintiffs and the Class to COVID-19, Plaintiffs and the Class have suffered illness and injury as described above in ¶¶ 69-83.

114. As a direct and proximate result of the aforementioned negligence of Defendants in exposing them to actual risk of immediate physical injury, Plaintiffs and the Class have suffered physical injury, emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized by the fear of developing COVID-19. It is expected that they will

continue to suffer and will, in the future, require medical services not of a kind generally anticipated as part of the effects of daily life.

## SECOND CAUSE OF ACTION
## GROSS NEGLIGENCE AGAINST ALL DEFENDANTS

115.   Plaintiffs re-allege all allegations in paragraphs 1 – 99 as if alleged fully herein.

116.   Defendants PRINCESS and its owner CARNIVAL, which supervises and monitor's PRINCESS's adherence to safety, security, environmental, and regulatory requirements, each owed a duty to Plaintiffs and the Class to:  safeguard against and mitigate the risks of passenger injury and illness; appropriately disinfect and sanitize the M/V GRAND PRINCESS, in light of the circumstances of a global pandemic; notify Plaintiffs and the Class of the actual and especially high risk of contracting COVID-19 aboard the M/V GRAND PRINCESS; disembark passengers and crew members who had likely come into contact with individuals infected with COVID-19; and implement medical screening and examination protocols for crew and passengers.

117.   Defendants knew of the unreasonably high risk of viral contagion of COVID-19 on cruise ships, and Defendants knew that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19 in light of the prior situation on the Diamond Princess off the coast of Japan.

118.   Defendants' conduct in deciding to continue to operate the M/V GRAND PRINCESS with Plaintiffs and the Class aboard, even with the aforementioned knowledge, demonstrates an intentional failure to do what a reasonably careful cruise ship owner and operator would do under the circumstances, exhibits a willful and conscious disregard for the safety of Plaintiffs and the Class, and evidences recklessness and indifference by Defendants, which constitutes gross negligence.

119.   Defendants' failure to abide by the guidelines issued on February 3, 2020, by not disembarking, quarantining or otherwise sheltering in their cabins the

CLASS ACTION COMPLAINT FOR DAMAGES

1  passengers and crew members known to have come into contact with the

2  passenger(s) suffering from COVID-19 symptoms onboard the instant cruise

3  demonstrates a willful and conscious disregard for the rights and safety of others

4  and amounts to an extreme departure of what a reasonably careful cruise ship owner

5  and operator would do.

6      120.   Defendants' choice not to warn Plaintiffs and the Class of their actual

7  risk of harm in being exposed to COVID-19 after learning about a passenger

8  onboard who came down with symptoms (and later died) constitutes a failure to

9  provide even a modicum of care to Plaintiffs and the Class. The continued and

10 repeated choice not to provide passengers with notice of the actual risks facing

11 them demonstrates a willful and conscious disregard for the rights and safety of

12 others and amounts to an extreme departure of what a reasonably careful cruise ship

13 owner and/or operator would do.

14     121.   Moreover, Defendants' behavior demonstrated a willful and conscious

15 disregard for the rights and safety of others, and an extreme departure of what a

16 reasonably careful cruise ship owner and/or operator would do in their continued

17 and repeated choices to:  not effectively sanitize and disinfect the M/V GRAND

18 PRINCESS during the San Francisco-Mexico voyage; not institute medical

19 screening and examinations for passengers and crew members; host large social

20 gatherings and meals; conduct daily turn-down service; and not implement

21 quarantine or social distance protocols at any point during the voyage. These

22 decisions manifest Defendants' utter failure to provide even a modicum of care to

23 Plaintiffs and the Class.

24     122.   Defendants chose to place profits over people, including the safety of

25 their passengers, crew, and the general public in continuing to operate business as

26 usual, despite their knowledge of the actual—potentially lethal—risk to Plaintiffs

27 and the Class.

28

CLASS ACTION COMPLAINT FOR DAMAGES

123.   As a direct and proximate result of Defendants' conduct, Plaintiffs were placed at actual, continual risk of immediate, and potentially fatal, physical injury.

124.   As a direct and proximate result of Defendants' breach of their duties of care and their negligent exposure of Plaintiffs and the Class to COVID-19, Plaintiffs and the Class have suffered illness and injury as described above in ¶¶ 69-83.

125.   Finally, as a direct and proximate result of Defendants' gross negligence in exposing Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame. They were traumatized by the fear of developing COVID-19. It is expected that they will continue to suffer and will, in the future, require medical services not of a kind generally accepted as a typical part of daily life.

### THIRD CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

126.   Plaintiffs re-allege all allegations in paragraphs 1 – 99 as if alleged fully herein.

127.   Defendants knew or should have known of the actual risk of viral contagion of COVID-19 aboard cruise ships, and, in light of the situation on the Diamond Princess only 3 weeks prior to the instant voyage on the M/V GRAND PRINCESS, Defendants knew or should have known that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19.

128.   Even in light of this information, however, Defendants failed to implement any effective screening or medical examination procedures for passengers boarding the ship prior to the voyage.

CLASS ACTION COMPLAINT FOR DAMAGES

129. Defendants also knew or should have known that at least one passenger traveling on the instant trip aboard the M/V GRAND PRINCESS was experiencing symptoms of COVID-19 (that passenger eventually tested positive for COVID-19).

130. Nevertheless, Defendants continually and repeatedly:  failed to take any effective actions to prevent or mitigate the spread of COVID-19; failed to alert passengers to the possibility of infection aboard the ship; and hosted and encouraged participation in large group activities and events that Defendants knew could lead to large-scale infection among the crew and passengers.

131. These choices by Defendants created a dangerous and threatening environment in which Plaintiffs and the Class were forced to live for almost two weeks, at all times directly at risk of becoming infected with, made ill by, and/or spreading COVID-19.

132. As the direct and proximate result of Defendants' actions and omissions throughout the duration of their voyage aboard the M/V GRAND PRINCESS, Plaintiffs and members of the Class were in the "zone of danger," where they were at immediate risk of actual physical harm, including the potential of contracting COVID-19, suffering from the illness—including experiencing shortness of breath, coughing, body aches, fever, and/or any number of yet-to-be-identified future ailments, such as liver damage, kidney failure, or blood clotting—and potentially death as a result of the virus.

133. Plaintiffs and members of the Class experienced severe psychic injuries, of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, when they were forced to watch first hand as their friends and family members became ill with COVID-19, feared for their own safety and well-being, and continue to fear that they may begin exhibiting symptoms or health complications not yet identified as a result of COVID-19.

CLASS ACTION COMPLAINT FOR DAMAGES

1  Plaintiffs suffered physical and emotional injury as the direct and proximate result
2  of Defendants' misconduct.

3      134.   As a direct and proximate result of Defendants' extreme departure
4  from the ordinary standard of care and their failure to meet their duties of care to
5  Plaintiffs and the Class by providing even scant care, which exposed Plaintiffs and
6  the Class to COVID-19, Plaintiffs and the Class have suffered illness and injury as
7  described above in ¶¶ 69-83.

8      135.   Finally, as a direct and proximate result of Defendants' gross
9  negligence in exposing Plaintiffs and the Class to actual risk of immediate physical
10  injury, Plaintiffs and the Class have suffered emotional distress of the nature and
11  type that reasonable persons would suffer under the circumstances alleged in this
12  Complaint, including, but not limited to, suffering, anguish, fright, horror,
13  nervousness, grief, anxiety, worry, shock, humiliation and shame related to their
14  own risk of contracting COVID-19 and the suffering they witnessed among their
15  fellow passengers who contracted COVID-19. Plaintiffs and members of the class
16  were traumatized by the fear of their family members, friends and fellow
17  passengers developing COVID-19 and by the threat to their own health of
18  becoming infected with the virus or suffering future negative health outcomes or
19  complications related to exposure to and / or contraction of the virus.

20      136.   Plaintiffs and Class members were endangered and harmed by
21  Defendants' actions when they were forced to travel on an infested vessel without
22  appropriate information about the risks facing them. It is expected that Plaintiffs
23  and the Class will continue to suffer and will, in the future, require medical services
24  not of a kind generally anticipated as a typical part of daily life.

25
26
27
28

CLASS ACTION COMPLAINT FOR DAMAGES

**FOURTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

137.   Plaintiffs re-allege all allegations in paragraphs 1 – 99 as if alleged fully herein.

138.   Defendants knew or should have known of the actual risk of viral contagion of COVID-19 aboard cruise ships, and, based on their experience with COVID-19 outbreak aboard the Diamond Princess only 3 weeks prior to the instant voyage on the M/V GRAND PRINCESS, Defendants knew or should have known that it was especially dangerous to expose Plaintiffs and the rest of the Class to COVID-19.

139.   By or before the time of boarding passengers onto the M/V GRAND PRINCESS, on February 11, 2020, Defendants knew or should have known of the extreme risks to health and safety—including the possibility of death—presented by COVID-19.

140.   In light of this knowledge and experience, and particularly given that cruise ships present an especially heightened risk of contagion, Defendants exhibited extreme and outrageous conduct when, *inter alia*, Defendants boarded Plaintiffs and the Class onto the M/V GRAND PRINCESS on February 11, 2020, without taking any effective measures to medically screen or examine passengers for COVID-19 symptoms.

141.   Defendants also knew or should have known during the instant trip that at least one passenger aboard the M/V GRAND PRINCESS was experiencing symptoms of COVID-19.

142.   Defendants additionally acted extremely and outrageously when they chose not to effectively clean, sanitize, sterilize, or disinfect the M/V GRAND PRINCESS during the instant trip.

143.   Defendants exhibited repeated and continued extreme and outrageous conduct when Defendants failed to: alert Plaintiffs to the fact that at least one passenger on the trip was experiencing COVID-19 symptoms and had come into

contact with passengers and crew members; notify Plaintiffs and the Class about the actual and potential threat of exposure to, infection with, and the possibility of spreading COVID-19 aboard the ship; failed to advise Plaintiffs and the Class about the possibility and health benefits of disembarking during the trip, at one of the vessel's ports of call; and failed to notify Plaintiffs of the risks of remaining onboard the ship for the February 21, 2020 embarkation to Hawaii.

144.   Defendants continued to behave extremely and outrageously when, after learning about the ill passenger, they:  encouraged Plaintiffs and the Class to continue mingling and participating in large group events and functions throughout the duration of the trip; continued to provide turn down service to passengers despite the fact that crew members had likely been exposed to COVID-19; and failed to institute any policies for quarantine, isolation, or social distancing for passengers.

145.   As a direct and proximate result of Defendants' intentional and reckless behavior and omissions, Plaintiffs and the Class suffered severe emotional distress and physical harm.

146.   Plaintiffs and the Class were forced to watch as their friends and family members became ill with COVID-19, and, all the while, fear for their own safety and well-being. Plaintiffs suffered physical and emotional injury as the direct and proximate result of Defendants' misconduct, and Plaintiffs continue to suffer from fear and anxiety that they may still begin exhibiting symptoms or experience as-yet-unidentified complications due to their exposure to and potential contraction of COVID-19 while aboard the M/V GRAND PRINCESS.

147.   As a direct and proximate result of Defendants' extreme departure from the ordinary standard of care and their failure to meet their duties of care to Plaintiffs and the Class by providing even scant care, which exposed Plaintiffs and the Class to COVID-19, Plaintiffs and the Class have suffered illness and injury as described above in ¶¶ 69-83.

148.   Finally, as a direct and proximate result of Defendants' behavior, which exposed Plaintiffs and the Class to actual risk of immediate physical injury, Plaintiffs and the Class have suffered emotional distress of the nature and type that reasonable persons would suffer under the circumstances alleged in this Complaint, including, but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame related to their own risk of contracting COVID-19 and the suffering they witnessed among their fellow passengers who contracted COVID-19. Plaintiffs and members of the class were traumatized by the fear of their family members, friends and fellow passengers developing COVID-19 and by the past and ongoing threat to their own health of becoming infected with the virus and potentially suffering from as-yet-unidentified negative health outcomes and complications.

149.   Plaintiffs and Class members were endangered and harmed by Defendants' actions when they were forced to travel on an infected vessel without appropriate information about the risks facing them. It is expected that Plaintiffs and the Class will continue to suffer and will, in the future, require medical services not of a kind generally accepted as part of the wear and tear of daily life.

150.   Throughout the events described in this Complaint, Defendants repeatedly acted with conscious, callous, and/or reckless disregard for the rights, interests, health and safety of their passengers, such that the imposition of punitive damages, under CA Civil Code Section 3294 and/or all other applicable law, is necessary and appropriate to punish them for their course of conduct, and to deter them and others, and protect the public, from the consequences of similar conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, and all others similarly situated, pray for judgment against Defendants, and each of them, as follows:

1.      An order certifying the proposed Class pursuant to Fed. R. Civ. P. Rule

CLASS ACTION COMPLAINT FOR DAMAGES

23(a) and (b)(1), (b)(2), (b)(3) and/or (c)(4), designating Plaintiffs Cynthia Lynn Ford, James David Arthur Ford, Carole Kealy, Kelly Sandoval, and Ruben Sandoval as named representatives of the Class and designating the undersigned as Class Counsel;

2.      An award of damages totaling in excess of Five Million Dollars ($5,000,000.00), inclusive of compensatory damages for Plaintiffs' injuries, including emotional pain and suffering and any other damages allowed by law, in an amount to be proven at trial;

3.      An award of the costs of Plaintiffs' and the Class's ongoing medical monitoring and diagnostic examinations required to diagnose, prevent, and/or treat current or future injury related to Plaintiffs' and Class Members' exposure to and potential contraction of COVID-19, in light of the evolving scientific understanding of the full risk and scope of health outcomes of the virus;

4.      An injunction requiring Defendants to: disclose to future passengers the nature and rate of risk of communicable disease upon their cruise ships; implement disinfecting and sanitizing procedures on each of their ships in between and during voyages; implement appropriate social distancing and physical distancing protocols to avoid or reduce the transmission of communicable pathogens; disembark and quarantine passengers when Defendants become aware of a heightened risk of communicable disease aboard a ship; and canceling or discontinuing the operation of cruises when Defendants know or should have known of a potential deadly pathogen or similar aboard their ships.

5.      An award of attorneys' fees and costs, as allowed by law;

6.      An award of pre-judgment and post-judgment interest, as provided by law;

7.      Leave to amend this Complaint to conform to the evidence produced at trial; and

8.      For such other and further relief as the Court deems just and proper.

CLASS ACTION COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal

3   Rules of Civil Procedure.

4

5                                        Respectfully submitted,

6   Dated:      July 13, 2020            NELSON & FRAENKEL LLP

7

8                                        By:   */s/ Gretchen M. Nelson*

9                                        Gretchen M. Nelson (112566)
                                         gnelson@nflawfirm.com
10                                       Carlos F. Llinás Negret (284746)
                                         cllinas@nflawfirm.com
11                                       601 So. Figueroa Street, Suite 2050
                                         Los Angeles, CA 90017
12                                       Telephone:  213-622-6469
                                         Facsimile:  213-622-6019
13

14  Dated:      July 13, 2020            MARY ALEXANDER & ASSOCIATES, P.C.

15

16                                       By:   */s/ Mary E. Alexander*

17                                       Mary E. Alexander, Esq. (SBN 104173)
                                         *malexander@maryalexanderlaw.com*
18                                       Brendan D.S. Way, Esq. (SBN 261705)
                                         *bway@maryalexanderlaw.com*
19                                       44 Montgomery Street, Suite 1303
                                         San Francisco, California 94104
20                                       Telephone: (415) 433-4440
                                         Facsimile: (415) 433-5440
21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES

1

2

Dated:    July 13, 2020

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

3

4

By:   /s/ Elizabeth J. Cabraser

5

6

7

8

Elizabeth J. Cabraser (SBN 083151)
ecabraser@lchb.com
Jonathan D. Selbin (SBN 170222)
jselbin@lchb.com
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

9

10

11

12

13

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
Mark P. Chalos (*Pro Hac Vice* forthcoming)
mchalos@lchb.com
222 2nd Avenue South, Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Facsimile: (212) 313-9965

14

*Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES