O

1

2

3

4

5

6

7UNITED STATES DISTRICT COURT

8CENTRAL DISTRICT OF CALIFORNIA

9

10 CYNTHIA LYNN FORD, et al.,         )   Case No.  20-cv-6226 DDP (AFMx)
                                     )
11                      Plaintiffs,  )   **ORDER GRANTING IN PART,**
                                     )   **DENYING IN PART, DEFENDANTS'**
12       v.                          )   **MOTION TO DISMISS**
                                     )
13                                   )
                                     )   [Dkts. 27, 31, 34]
14                                   )
                                     )
15                                   )
                                     )
16 CARNIVAL CORPORATION, et al.,      )
                                     )
17                      Defendants.   )

18

19       Presently before the court are Defendants' Motions to Dismiss.  (Dkts. 27, 31, 34.)

20 Having considered the submissions of the parties and heard oral argument, the court

21 grants Defendants' motions in part, denies in part, and adopts the following Order.

22 **I. BACKGROUND**

23       Twenty-three individual plaintiffs bring this putative class action against

24 Defendants Carnival Corporation, a Panama corporation headquartered in Miami,

25 Florida, Carnival PLC, a Wales corporation headquartered in Miami, Florida

26 (collectively, ("Carnival")), and Princess Cruise Lines LTD ("Princess"), a Bermuda

27 corporation headquartered in Santa Clarita, California (collectively, ("Defendants")).

28 (Dkt. 24, First Amend. Compl. ("FAC") ¶¶ 1-26.)  Plaintiffs assert causes of action for

1
2
3
4
5
6

negligence, gross negligence, negligent infliction of emotional distress, and intentional

infliction of emotional distress based on Defendants' response to the COVID-19

pandemic on the cruise ship the *Grand Princess*.  (*See* FAC.)  According to Plaintiffs,

Carnival and Princess are alter egos; Carnival "exerts control and domination over

Princess's business and day-to-day operations" and on this basis, Plaintiffs seek to hold

Carnival, Princess's parent company, liable in tort.  (*Id.* ¶¶ 28-38.)

7
8
9
10
11
12
13
14
15
16
17
18
19

Plaintiffs were passengers aboard the cruise ship *Grand Princess* from February 11,

2020 to February 21, 2020 on a roundtrip voyage from San Francisco to Mexico.  (*Id.* ¶ 95.)

Plaintiffs allege that prior to their onboarding, Defendants were aware of the unique

risks created by the cruise ship environment and had experienced COVID-19 outbreaks

on other vessels.  (*Id.* ¶¶ 72-94, 95.)  Plaintiffs allege that Defendants boarded passengers

without conducting "any effective medical screenings for passengers and without

providing any additional information about best practices to mitigate or prevent the

spread of COVID-19."  (*Id.*)  Defendants "did not alter their on-ship protocols, event

itineraries, or cleaning or disinfectant practices," nor "provide passengers . . . any

information about COVID-19."  (*Id.* ¶ 96.)  Plaintiffs further allege that on February 19,

2020, Defendants "became aware of at least one passenger suffering from COVID-19

symptoms onboard the [*Grand Princess*]" but did not alert Plaintiffs nor "put into place

any quarantine requirements" or other similar protocols.  (*Id.* ¶ 97.)

20
21
22
23
24
25
26
27

On February 21, 2020, the *Grand Princess* returned to San Francisco and all but four

plaintiffs disembarked.  (*Id.* ¶ 101.)  On February 25, 2020, Defendants "emailed

passengers that had traveled on the [*Grand Princess*] trip to Mexico alerting them that

some of their fellow travelers had suffered from COVID-19 and that they may have been

exposed to COVID-19."  (*Id.* ¶ 102.)  Plaintiffs allege that "[a]t least 100 passengers who

traveled on board the [*Grand Princess*] [ ] tested positive for COVID-19, and at least two

passengers . . . died after disembarking."  (*Id.* ¶ 100.)  Plaintiffs allege that if they "had

known the serious and actual risks of contracting or spreading COVID-19," Plaintiffs

28

2

would not have sailed, or "at a minimum, if they had been made aware after embarkation of the growing and continued risk, they would have disembarked from the ship at one of its ports of call." (*Id.* ¶ 110.)

Plaintiffs allege that as a result of Defendants' negligent response to COVID-19 on the *Grand Princess*, Plaintiffs were injured.  Five Plaintiffs tested positive for COVID-19 and allege that they suffered symptoms from the disease.[1]  (*Id.* ¶¶ 131, 132, 135, 137, 138.) Ten Plaintiffs allege symptoms associated with COVID-19 but do not allege a positive diagnosis.[2]  (*Id.* ¶¶ 133, 134, 136, 139-45.)  Eight Plaintiffs do not allege any symptoms associated with COVID-19 nor a positive diagnosis, but instead appear to allege trauma from the "direct exposure to COVID-19, the risk that they would contract the virus, and the reasonable apprehension associated with that risk".[3]  (*See id.* ¶¶ 130-47.)

Defendants presently move to dismiss the First Amended Complaint under Rule 12(b)(6).  (*See* dkts. 27, 31, 34.)

**II. LEGAL STANDARD**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-

---

[1] Plaintiffs Cynthia Lynn Ford, James David Arthur Ford, Ruben Sandoval, Larry H. Fisher, and Rita Fisher.  (FAC ¶¶ 131, 132, 135, 137, 138.)

[2] Plaintiffs Carole Kealy, Kelly Sandoval, Sarah Davies, David Gonsalves, Mary Ann Gonsalves, Tracie Ling, Peggie Losie, Marie Rivera, Paul Rivera, and Judith Shaterian. (*Id.* ¶¶ 133, 134, 136, 139-45.)

[3] Plaintiffs Stephen Collins, Tracy Emerald, Brian Losie, John Miller, Renate Miller, Kenneth Prag, John Shaterian, and Kurt Emerald. (*See* FAC.)

3

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth."  *Id.* at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted.  *Id*. at 678 (citations and internal quotation marks omitted).

**III. DISCUSSION**

    **A.  Negligence, Gross Negligence, and Negligent Infliction of Emotional Distress**

        Defendants move to dismiss Plaintiffs' negligence claims on three grounds.  First, Defendants argue that Plaintiffs have not plausibly alleged actual or constructive knowledge that sailing on February 11, 2020 was a risk creating condition or that Defendants' measures to contain an outbreak during the voyage would prove to be inadequate.  (Dkt. 31, Carnival Mot. at 9-13.)  Second, Defendants argue that Plaintiffs have failed to allege "concrete, harmful symptoms of COVID-19."  (*Id.* at 13.)  Third, Defendants argue that Plaintiffs have failed to allege causation.  (*Id.* at 17.)

        *i.    Duty of Care*

        Plaintiffs' claims are claims of maritime torts.  (*See* FAC.)  The "sufficiency of the complaint is governed by the general maritime law of the United States."  *Stacy v. Rederiet Otto Danielsen, A.S.*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1409 (9th Cir. 1994)).  For claims of negligence, Plaintiffs must allege duty, breach, causation, and damages.  *Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 953 (9th Cir. 2011).  "'[T]he owner of a ship in navigable waters owes to all who are on board . . . the duty of exercising reasonable care under the circumstances of each case.'"  *Id. (*quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)).  "Where the condition constituting the basis of the plaintiff's claim is not unique to the maritime context, a carrier must have 'actual or constructive notice of the risk-creating condition' before it can be held liable."  *Id.* (quoting *Keefe v. Bahama Cruise Line,*

1
2
3
4
5
6

*Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)).  In contrast, where the condition is peculiar to the maritime context, a heightened duty of care is required.  *See Catalina Cruises v. Luna*, 137 F.3d 1422, 1425-26 (9th Cir. 1998); *see also Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir. 1983) ("The extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case.").

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiffs argue that Defendants were subject to a heightened duty of care because "[c]ruise ships create a particular risk of viral outbreak . . . ."  (Dkt. 37, Opp. at 5.) Plaintiffs acknowledge that the "risk of exposing individuals to COVID-19 is not unique to cruise ships," but contend that "the *increased risk* of exposing individuals to COVID-19 is unique to the maritime context."  (*Id.* at 5).  However, the increased risk of exposure to COVID-19 occurs in any setting where individuals are in close proximity and engage in prolonged interpersonal contact—such increased risk, which certainly exists in maritime travel, is not "*uniquely* associated with maritime travel."  *See Samuels*, 656 F.3d at 954 (emphasis added).  Plaintiffs' allegations support this conclusion.  Plaintiffs allege that "[s]tudies tend to show that the virus can be transmitted through person-to-person contact, but also through air flow, and on surfaces." (FAC ¶ 57.)  "[R]ecent studies have indicated that spaces with[] poor or limited ventilation can cause greater accumulation of the airborne virus because of the presence of aerosolized droplets that can cause transmission." (*Id.*)  Accordingly, circumstances which increase the risk of COVID-19 transmission also exist, for example, in nursing homes, classrooms, and on many forms of public transportation such as commuter trains, buses, and airplanes.  Thus, the alleged risk-creating condition is not unique to the maritime context.

24
25
26
27

Because Plaintiffs' allegations are insufficient to plausibly establish a unique risk creating condition, the court next reviews the sufficiency of Plaintiffs' allegations of actual or constructive knowledge of the risk-creating condition.  Plaintiffs appear to allege actual or constructive knowledge of a COVID-19 risk to passengers at two points

28

1    in time: (1) At the time that Defendants decided to set sail on February 11, 2020, and (2)

2    during the voyage, prior to disembarking on February 21, 2020.  As to the first point in

3    time, Plaintiffs allege various public announcements about the risks of COVID-19 by the

4    United States Centers for Disease Control and Prevention ("CDC") (FAC ¶ 50), the World

5    Health Organization ("WHO") (*id.* ¶ 51), and the European Union (*id.* ¶ 72).  Plaintiffs

6    also allege that "in early February 2020, an outbreak of COVID-19 occurred aboard the

7    cruise ship *Diamond Princess*".  (*Id.* ¶ 74.)  "In a February 18, 2020, . . . the CDC in

8    response to the crisis aboard the *Diamond Princess*, the CDC stated that 'the rate of new

9    reports of positives [now] on board, especially among those without symptoms,

10   highlights the high burden of infection on the ship and potential for ongoing risk.'" (*Id.* ¶

11   79.)  As to the second point in time, Plaintiffs allege that on February 19, Defendants

12   became "aware of at least one passenger suffering from COVID-19 symptoms onboard,"

13   because that passenger "sought medical treatment from the medical center onboard" and

14   "reported suffering from acute respiratory distress for about a week before seeking

15   treatment."  (*Id.* ¶¶ 97, 99 (internal quotation marks omitted).)

16          Plaintiffs' allegations are sufficient at this stage to plausibly demonstrate that

17   Defendants knew or should have known that COVID-19 posed a threat to its passengers.

18   The court notes that during the early days of the pandemic, the information available

19   was changing day to day, and at times, statements made by world leaders were

20   contradictory or minimized the risks of COVID-19.  At the pleading stage, however, the

21   court cannot evaluate the significance of the public officials' statements or the

22   significance of the outbreak on the *Diamond Princess*.  Although it may be true, as

23   Defendants contend, that on February 11, 2020, they did not have sufficient knowledge of

24   the specific risks of COVID-19, it is plausible that at some point during the voyage,

25   Defendants became aware of those risks based on statements specific to the *Diamond*

26   *Princess* outbreak and reports by a passenger of COVID-19 related symptoms.  Therefore,

27   the court declines to dismiss Plaintiffs' negligence claim on this basis.  Defendants' actual

28                                          6

or constructive knowledge on February 11, 2020, before setting sail and at the time that a passenger reported symptoms associated with COVID-19 is a factual issue that cannot be determined at this stage.[4]

      *ii.    Injury*

The "zone of danger" test "confines recovery for stand-alone emotional distress claims to plaintiffs who: (1) 'sustain a physical impact as a result of a defendant's negligent conduct'; or (2) 'are placed in immediate risk of physical harm by that conduct'-that is, those who escaped instant physical harm, but were 'within the zone of danger of physical impact.'" *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 146 (2003) (quoting *Metro-North Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997)).  Here, the zone of danger test is only applicable to plaintiffs who do not allege that they tested positive for COVID-19 or that they exhibited symptoms of COVID-19.  *See Ayers*, 538 U.S. at 136 (describing "[t]wo categories of claims for emotional distress damages: Stand-alone emotional distress claims not provoked by any physical injury, for which recovery is sharply circumscribed by the common-law zone-of-danger test; and emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted.").  Plaintiffs who allege that they tested positive or that they exhibited symptoms of COVID-19 necessarily allege physical injury—contracting the disease[5] and injury from the disease.  These Plaintiffs sufficiently allege an injury for which they could

---

[4] While the court concludes that the allegations plausibly rise to the level of negligence, the allegations are insufficient to plausibly raise intentional infliction of emotional distress claims.  *See Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002) (explaining that conduct must be "extreme and outrageous conduct" that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . and utterly intolerable in a civilized community." (citation omitted)).  Accordingly, the court dismisses Plaintiffs' claims for intentional infliction of emotional distress without leave to amend.

[5] As the court discusses below, these plaintiffs must nonetheless plausibly plead causation.

7

1
2
recover.  *See, e.g., Archer v. Carnival Corp. & PLC*, No. 2:20-CV-04203-RGK-SK, 2020 WL 7314847, at *7 (C.D. Cal. Nov. 25, 2020).

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
In contrast, Plaintiffs who do not allege that they tested positive for COVID-19 or that they experienced symptoms of COVID-19 must meet the zone of danger test. Plaintiffs argue that under the second prong of the zone of danger test, "Defendants exposed them to COVID-19 and placed them at 'risk of immediate physical injury'" (Opp. at 11 (citing FAC ¶ 146).)  Plaintiffs contend that "[t]he fact that at least 100 passengers who travelled aboard the *Grand Princess* tested positive for COVID-19, and at least two passengers died, supports their allegations[, and] demonstrates that the entire *Grand Princess* was plausibly a zone of danger and all passengers were at immediate risk of contracting COVID-19." (*Id.* ¶ 11.)  The court disagrees.  Contracting COVID-19 is not plausibly imminent, immediate, or an instant physical harm.  There are too many factors involved to determine the risk of exposure for each individual.  Each person's personal conduct varies and contributes to whether that person is in "imminent" risk of contracting the virus.  The length of time a person is exposed to the virus will also influence whether that person contracts the virus.  Further, even if a person is exposed, and Defendants' conduct was a factor to that exposure, contracting the virus does not occur instantly or immediately.

19
20
21
22
The court concludes that the eight plaintiffs who only allege fear of contracting the virus and the resulting emotional distress cannot pursue negligent infliction of emotional distress claims because exposure to the virus does not result in "immediate risk" of physical harm.  The court dismisses these plaintiffs' claims without leave to amend.

23
*iii.    Causation*

24
25
26
27
Plaintiffs have not sufficiently alleged facts to raise the plausible inference that they were exposed to COVID-19 onboard the *Grand Princess* as a result of Defendants' negligent conduct and contracted the disease.  Plaintiffs have not alleged even basic information, such as when Plaintiffs tested positive for COVID-19 or when Plaintiffs

28

1
2
3
4
5

began to exhibit symptoms.  Because Plaintiffs do not allege when they began to experience symptoms, it is impossible to know whether Plaintiffs boarded the *Grand Princess* with the disease or whether Plaintiffs contracted the disease after offboarding. Such deficiencies may be cured by amendment by those Plaintiffs who have alleged that they tested positive or that they exhibited symptoms for COVID-19.

6

**B. Alter Ego**

7
8
9
10
11
12
13
14
15
16

   "Admiralty courts may pierce the corporate veil in order to reach the alter egos of a corporate defendant."  *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997) (internal quotations omitted).  To disregard corporate separateness in admiralty requires a showing that "the controlling corporate entity exercise[s] total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own."  *Id.* (quoting *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 859 (9th Cir. 1986)).  "[F]ederal common law allows piercing of the corporate veil where a corporation uses its alter ego to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own."  *Id.*

17
18
19
20
21
22
23
24
25
26
27

   Here, Plaintiffs have not plausibly alleged that Carnival exercises *total domination* over Princess.  Plaintiffs allegations appear to describe a typical parent-subsidiary relationship.  (*See* FAC ¶ 37 ("Carnival and Princess [ ]share the same Board of Directors and almost all of the same executive officers and CARNIVAL and PRINCESS also appear to use the same assets, including the vessel that is the subject of this Complaint."); ¶ 32 (describing Carnival's SEC filing in which Carnival claims "a portfolio of cruise brands" which includes Princess); ¶ 34 ("Carnival claims control over Princess's operations . . . in a federal criminal plea agreement signed by Carnival in 2016, Carnival stated that it []currently monitors and supervises environmental, safety, security, and regulatory requirements for Princess and other Carnival brands.").)  Further, there are no allegations that Carnival uses Princess to perpetrate fraud.  Absent nonconclusory allegations

28

9

1

2

demonstrating Carnival's total domination over Princess, Plaintiffs cannot pursue their claims against Carnival under an alter ego theory of liability.

3

The court dismisses Plaintiffs' claims against Carnival with leave to amend.

4

### C. Class Action Waiver

5

6

7

8

9

10

11

12

13

14

Defendants next argue that Plaintiffs' class action claims should be dismissed because "they all agreed to a class-action waiver in the Passage Contract." (Princess Mot. at 5.) In support of its motion, Defendants submit the declaration of Princess' Director of Customer Relations, Collin Steinke, declaring to Princess's booking process. (Dkt. 27-2, Steink Decl.) At oral argument, Plaintiffs argued that the factual record, at this stage, regarding the passage contract consists of only Defendants' employee's declaration and urged the court to permit targeted discovery into the passage contract. Plaintiffs note that at this stage, Plaintiffs were unable to cross-examine Mr. Steinke or gather additional information regarding the manner in which the passage documents were presented to Plaintiffs.

15

16

17

18

19

20

The court agrees that, at the pleading stage, where there appears to be a factual dispute regarding context, how the documents were presented to Plaintiffs and agreed to, the better practice is to have the issue addressed on a complete factual record. The issue is better raised in the context of a motion for summary adjudication. Thus, the court denies Defendants' motion to dismiss or strike the class action allegations without prejudice.

21

### D. Standing to seek injunctive relief

22

23

24

25

26

27

Lastly, Defendants argue that Plaintiffs lack standing to seek injunctive relief because Plaintiffs do not allege that they will travel on a Princess cruise ship again nor that Princess's conduct will certainly cause Plaintiffs' injury. (Princess Mot. at 16.) The court agrees. Plaintiffs' allegation that "[i]n the future, Plaintiffs would like to go on cruises again, including cruises operated by Defendants . . . .", (FAC ¶ 151), is insufficient to establish imminent future injury. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493

28

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(2009) ("the threat must be actual and imminent, not conjectural or hypothetical");

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("allegations of possible future

injury are not sufficient").  The court grants Plaintiffs leave to amend to sufficiently allege

standing.

**IV. CONCLUSION**

The court grants Defendants' motions to dismiss in part, denies in part, and orders

as follows:

(1) The court dismisses Stephen Collins, Tracy Emerald, Brian Losie, John Miller,

Renate Miller, Kenneth Prag, John Shaterian, and Kurt Emerald's emotional distress

claims without leave to amend;

(2) the court dismisses the remaining Plaintiffs' negligent infliction of emotional

distress claims with leave to amend to plausibly allege causation;

(3) the court dismisses Plaintiffs' intentional infliction of emotional distress claims

without leave to amend;

(4) the court grants Plaintiffs leave to amend to plausibly plead a theory of liability

against Carnival and to properly plead standing for injunctive relief; and

(5) the court denies Defendants' motion to dismiss or strike the class action

allegations without prejudice.

Any amendment must be filed within fourteen days from the date of this order.

**IT IS SO ORDERED.**

Dated: August 9, 2021

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

11